UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CRYSTAL NICOLE LOWE, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:17-cv-01436-RDP |
| CITY OF WARRIOR, ALABAMA, et al., | } |
| Defendants. | } |

**MEMORANDUM OPINION**

This case is before the court on Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. # 4). The parties have fully briefed the motion, and it is under submission. (Docs. # 4-1, 7, 8).

**I.     Background**

On August 16, 2016, Plaintiff and Hoyt Lowe ("Hoyt") finalized their divorce. (Doc. # 1 at ¶ 14). Plaintiff and Hoyt entered into a verbal agreement where "Plaintiff and their three children were to stay at the marital residence house until they were able to find a place to live." (*Id.*).

On the evening of August 24, 2016, Hoyt called the police to his residence in Warrior, Alabama. (*Id.* at ¶¶ 11, 13). Defendant Steve Scott, a sergeant with the Warrior Police Department, responded to the call. (*See id.* at ¶¶ 7, 15). Hoyt insisted that Plaintiff and their three children be removed from the residence. (*Id.* at ¶ 14). According to the Complaint, Defendant Scott instructed Plaintiff to leave the residence or she would be taken to jail. (*Id.* at ¶ 15). When Plaintiff attempted to explain the situation and her oral agreement with Hoyt, Scott

interrupted her and reiterated that she would be taken to jail if she did not leave the residence. (*Id.*). Scott instructed Plaintiff to gather her belongings and leave the residence. (*Id.*). Ultimately, Plaintiff left the residence with her three children. (*Id.* at ¶ 16).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Defendants have attached the divorce agreement between Plaintiff and Hoyt to their motion to dismiss. (Doc. # 4-2). The court can only consider an extrinsic document attached to a motion to dismiss "if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Plaintiff has not challenged the authenticity of the attached divorce agreement, nor has Plaintiff argued that her divorce agreement with Hoyt is not central to the claims. (*See* Doc. # 7 at 2). Rather, Plaintiff has argued that she retained a property interest in the residence after the divorce agreement and that, in any event, the agreement should have been enforced by contempt proceedings. (*Id.* at 2-3). From the parties' arguments, the court determines that the divorce agreement is central to at least Plaintiff's procedural due process claim, and, thus, it will consider the extrinsic divorce agreement attached to Defendants' motion to dismiss at this stage.

**III.    Analysis**

In her Complaint, Plaintiff alleges 42 U.S.C. § 1983 claims against Defendants for deprivation of due process and deprivation of equal protection based on Plaintiff's gender. (Doc. # 1 at ¶¶ 36-38, 42-44). Plaintiff also alleges a § 1983 claim against Defendants for their failure to institute adequate training and procedures for handling "domestic situations." (*Id.* at ¶¶ 47-50). Plaintiff also claims that Defendants violated 42 U.S.C. § 1986 by conspiring to violate her constitutional rights. (*Id.* at ¶¶ 51-52). Finally, Plaintiff raises state-law claims against all Defendants for wantonness, gross negligence, and intentional infliction of emotional distress. (*Id.* at ¶¶ 55-58, 60-64).

**A.    Plaintiff's § 1983 Claims Against Defendants City of Warrior and Raymond Horn Fail to State a Claim**

In Counts I, II, and III of the Complaint, Plaintiff alleges § 1983 claims against all Defendants, including the City of Warrior (the "City") and Raymond Horn, the police chief of the Warrior Police Department. After careful review, the court finds no plausible basis for holding the City or Horn liable for the constitutional claims premised on Defendant Scott's conduct.

**a.    There is No Plausible Basis for *Monell* Liability**

It is axiomatic that a municipality, such as the City, is only liable under § 1983 when a municipal employee or agent undertakes an action in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 690. Accordingly, to hold a municipality liable, a plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate

indifference to that constitutional right; and (3) that the policy or custom caused the constitutional violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).  A plaintiff may establish the existence of a municipal "policy" by identifying "(1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

The Complaint alleges that the City failed to institute adequate training and procedures for handling "domestic situations," but this terse allegation is not nearly enough to present a plausible basis for municipal liability.  (Doc. # 1 at ¶ 49).  The Supreme Court has recognized that, in limited circumstances, a decision to not train certain employees about avoiding certain constitutional violations can rise to an official government policy.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Church v. City of Huntsville*, 30 F.3d 1332, 1345 (11th Cir. 1994) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).  "[T]o prove the existence of [a] purported policy or custom of deliberate indifference by the City, Plaintiff must show that the City had notice of a need to adequately train or supervise police officers but purposefully did nothing." *Dial v. City of Bessemer*, 2016 WL 3054728, at *5 (N.D. Ala. May 31, 2016).  A municipality may be placed on notice of a need for additional training or supervision if it is aware of a pattern of constitutional violations or if the likelihood of a constitutional violation is so high that it is obvious additional training or supervision is needed.  *Barr v. Gee*, 437 F. App'x 865, 874 (11th Cir. 2011) (citing *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009)).

Here, Plaintiff has not pled that the City had notice of a need for additional training or policies for handling domestic situations. Plaintiff has not alleged any similar incident that would have placed City officials on notice of the need for additional training. Nor has Plaintiff presented any allegations or argument to explain why additional training or policies were obviously necessary. Ultimately, the only allegations supporting a *Monell* claim relate to Scott's interaction with Plaintiff. And, a single alleged constitutional violation, in isolation, is inadequate to support an inference of an official custom or policy tolerating such constitutional violations. *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion)). *See also Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Therefore, Plaintiff has failed to plausibly plead a *Monell* claim against the City based on inadequate training or policies.[1]

In her opposition brief, Plaintiff insists that the City should be liable for Scott's conduct because the Warrior Police Department is a small department, Scott is a supervisor, and a supervisor should have known that Scott's conduct was unconstitutional. (Doc. # 7 at 5). The court disagrees. First, this argument offers no basis for municipal liability because it seeks to impose § 1983 liability under a *respondeat superior* theory, rather than a custom or policy of the city. Second, to the extent Plaintiff is arguing that Scott was a final policymaker, this argument is unconvincing. Plaintiff has not alleged in the Complaint that Scott acted as a final policymaker for the City as a sergeant in the Warrior Police Department. And, such an allegation likely would be meritless since Scott is a subordinate of Horn (*see* Doc. # 1 at ¶¶ 6-7),

---

[1] This pleading deficiency also precludes any § 1983 claim against Defendant Scott for inadequate training.

and, thus, likely lacks "*final* authority to establish municipal policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (emphasis added) (plurality opinion). Accordingly, because Plaintiff has offered no plausible basis for holding the municipality liable for any constitutional violation committed by Defendant Scott, the § 1983 claims against the City are due to be dismissed.

        **b.**       **There is No Plausible Basis for Supervisory Liability**

Plaintiff asserts in her Complaint that Defendant Horn is the chief of the Warrior Police Department, but she offers no indication that Horn personally participated in the incident where Scott ordered her to leave the residence. (*See* Doc. # 1 at ¶¶ 6, 11-16). Similarly, Plaintiff does not argue that Defendant Horn is subject to supervisory liability for directing his subordinates to act unlawfully or knowing that they would act unlawfully and failing to stop them. Nor is there any basis for a finding of supervisory liability. Supervisors are not responsible for unconstitutional acts by their subordinates on the basis of *respondeat superior* liability or vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Rather, a supervisor is only liable under Section 1983 in an individual capacity if he or she personally participated in unconstitutional conduct or "when there is a causal connection" between his or her actions and an alleged constitutional deprivation. *Id.* "A causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,' . . . or when the supervisor's improper 'custom or policy resulted in deliberate indifference to constitutional rights.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citation and ellipsis omitted).

7

Plaintiff's Complaint offers no plausible basis for supervisory liability against Defendant Horn. The Complaint does not plausibly allege a history of unconstitutional conduct by Horn's subordinates that would have put him on notice of a need to correct the subordinates' conduct. Because Plaintiff has not alleged a history of unconstitutional conduct, she presents no basis for Horn's constructive awareness of a deficiency in the police department's training program. *Cf. Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1052-54 (11th Cir. 2014) (affirming a district court's grant of summary judgment on a failure-to-train claim due to a lack of evidence of similar constitutional violations). Nor has Plaintiff alleged that Horn was actually aware of a deficiency in the police department's training policy. (*See* Doc. # 1 at ¶¶ 47-50). Because there is no plausible basis for supervisory liability against Defendant Horn, and Plaintiff has not plausibly alleged that Horn personally participated in the August 24, 2016 incident, the § 1983 claims against Defendant Horn are due to be dismissed.

### B. Plaintiff Has Not Pled All Elements of a Procedural Due Process Claim

In Count I of the Complaint, Plaintiff asserts a procedural due process claim against Defendant Scott for depriving her of a property right. (Doc. # 1 at ¶¶ 36-38). Defendants argue that Plaintiff's procedural due process claim fails because she had no protected property right in continued use of the residence. Alternatively, Defendants argue that Plaintiff had an available post-deprivation remedy. The court addresses each argument below.

To state a procedural due process claim, a plaintiff must assert a deprivation of a protected liberty or property interest, state action that deprives her of that interest, and constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Federal courts look to state law to define the scope of a plaintiff's property interests. *Marine One, Inc. v. Manatee Cty.*, 898 F.2d 1490, 1492 (11th Cir. 1990). Generally, a person enjoys a

protected property interest in continued residency under a lease or tenancy arrangement. *E.g.*, *Grayden*, 345 F.3d at 1232 (citing *Greene v. Lindsey*, 456 U.S. 444, 450-51 (1982), and *Ward v. Downtown Dev. Auth.*, 786 F.2d 1526, 1530-31 (11th Cir. 1986)). "As a general rule, an eviction must be preceded by notice and an opportunity to be heard" unless "exigent circumstances" justify a postponement of the hearing. *Id.* at 1236. Nevertheless, after careful review, the court finds two fatal deficiencies in Plaintiff's procedural due process claim.

First, Plaintiff has not specifically identified the due process she was entitled to before being directed to leave. (*See* Doc. # 1 at ¶¶ 36-38). In *Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535 (11th Cir. 2013), the Eleventh Circuit considered a procedural due process claim brought against the United States for flooding of land held by an Indian tribe. *Id.* at 558-59. The court concluded that the tribe held a property interest due to a lease agreement and trustee deed for certain land, but it affirmed the district court's dismissal of the procedural due process claim because the claim "contain[ed] no allegation of the process the Tribe claims was due, much less that it was inadequate." *Id.* at 559. Similarly, Plaintiff has not specifically alleged what process should have been provided to her under the circumstances. Therefore, Count I of the Complaint is due to be dismissed for failure to state a procedural due process claim.[2]

Second, Plaintiff has not alleged that Alabama law provides an inadequate post-deprivation remedy. (Doc. # 1 at ¶¶ 36-38). *See also Tinney v. Shores*, 77 F.3d 378, 382 (11th

---

[2] The court also notes that Plaintiff has not specified what type of property interest she held in the residence at the time. Plaintiff has conceded that she granted Hoyt sole and exclusive use and occupancy of the residence in the August 16, 2016 divorce agreement. (Doc. # 7 at 2). Thereafter, she allegedly entered into an oral agreement with Hoyt to continue residing there until she found alternative housing. (Doc. # 1 at ¶ 14). The parties have not discussed -- and the court cannot determine from the limited allegations before it -- whether such an oral agreement should be considered a tenancy at will, a tenancy at sufferance, or some other kind of arrangement. Nor can the court determine what notice or procedure, if any, Plaintiff was entitled to when the arrangement ended. Plaintiff is encouraged to provide further detail about the property right she enjoyed on August 24, 2016 if she intends to replead her procedural due process claim against Scott.

Cir. 1996) ("[T]he Tinneys have failed to state a valid procedural due process claim because they have not alleged that Alabama law provided them with an inadequate post-deprivation remedy."). As Plaintiff hints to in her opposition brief, Alabama law provides contempt proceedings and eviction proceedings that might have been employed in this incident, if Hoyt had sought to evict her by procedurally valid means. (*See* Doc. # 7 at 2-4). Although Alabama has established eviction proceedings, it cannot predict whether an officer will follow or ignore those procedures in a given situation, so it cannot prevent random deprivations of occupation interests before they occur. *See Tinney*, 77 F.3d at 382 n. 1 (addressing a procedural due process claim premised on a landlord's failure to comply with attachment procedures before seeking the tenants' eviction from a mobile home). Because the state cannot predict a random and unauthorized departure from established procedures, "no procedural due process violation occurs unless the state fails to provide the opportunity to redress the situation after the fact." *Id.* Plaintiff cannot state a procedural due process claim here unless she alleges that post-deprivation remedies are unavailable or inadequate.

### C. Plaintiff Has Not Pled a Plausible Equal Protection Claim

In Count II of the Complaint, Plaintiff claims that Defendants, including Scott, deprived her of her equal protection rights on the basis of her sex. (Doc. # 1 at ¶¶ 42-44). To state a claim under the Equal Protection clause of the Fourteenth Amendment, a plaintiff typically must plead that (1) she is similarly situated to other persons who received more favorable treatment, and (2) her discriminatory treatment was based on a constitutionally protected interest such as race or gender. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). A plaintiff must also allege that the defendant acted with the intent to discriminate against her, and conclusory allegations of personal belief of disparate treatment are insufficient to state a claim. *Ardis v. Danheisser*, 2014

WL 103232, at *6 (N.D. Fla. Jan. 10, 2014) (citing *McClesky v. Kemp*, 481 U.S. 279, 292 (1987), and *E & T Realty v. Strickland*, 830 F.2d 1107, 1113 (11th Cir. 1987), among other authorities).

Here, Plaintiff's equal protection claim fails in two respects. First, Plaintiff's allegations fail to show that she was similarly situated to Hoyt on August 24, 2016. Plaintiff alleges that she had a verbal agreement to continue living at the residence (Doc. # 1 at ¶ 14), but she has not alleged that she had a similar possessory interest in the residence as Hoyt following the divorce. Indeed, Plaintiff cannot, consistent with Rule 11, claim that she had a similar possessory interest, as Hoyt obtained the right to use and occupy the residence in their divorce agreement. (Doc. # 4-2 at 7). Second, Plaintiff only includes a conclusory allegation that Defendants acted with discriminatory intent. (Doc. # 1 at ¶ 44) ("Defendants willfully and maliciously forced Plaintiff and her three children out of her residence because she is a female."). Plaintiff has offered no other allegations to substantiate the conclusion that Scott, Horn, or the City acted with intent to discriminate against her because of her sex. For these reasons, Count II of the Complaint is due to be dismissed.

**D.    Plaintiff Has Not Pled a Plausible § 1986 Violation**

In Count IV of the Complaint, Plaintiff asserts a § 1986 claim against all of the Defendants for conspiring to violate her due process and equal protection rights. (Doc. # 1 at ¶ 51). "The text of § 1986 requires the existence of a § 1985 conspiracy." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). Plaintiff has not alleged anywhere in her Complaint that Defendants violated 42 U.S.C. § 1985 by entering a conspiracy prohibited by that provision. Additionally, Plaintiff's factual allegations cannot support such a conspiracy. To state a claim under 42 U.S.C. § 1985(3), "a plaintiff must prove: (1) a conspiracy; (2) for the purpose of

11

depriving, either directly or indirectly, any person or class of persons from the equal protection of laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[3]  *Park*, 120 F.3d at 1161.  A § 1985 conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

For at least two reasons, Plaintiff has not adequately pled a conspiracy prohibited by § 1985(3).  First, Plaintiff has not adequately pled the formation of a conspiracy between Defendants and has provided no description of the agreement Defendants entered.  *See, e.g.*, *Holt v. Givens*, 2017 WL 5256755, at *4 (N.D. Ala. Nov. 13, 2017) ("The plaintiff's generalized allegation that a conspiracy existed among all of the named defendants is wholly insufficient to actually allege a viable conspiracy claim under § 1985.").  Plaintiff's allegation that "Defendants conspired to deny Plaintiff equal protection of the laws" is a conclusory allegation of the conspiracy element that is entitled to no weight.  (Doc. # 1 at ¶ 52); *Twombly*, 550 U.S. at 555, 557.  Second, Plaintiff has not pled that Defendants were motivated by a class-based discriminatory animus when they entered the conspiracy.  (Doc. # 1 at ¶¶ 51-52); *Park*, 120 F.3d 1161.  Therefore, Plaintiff's Complaint fails to sufficiently allege the existence of a conspiracy that violated § 1985, and, thus, her § 1986 claim must be dismissed as well.  *Park*, 120 F.3d at 1160.

### E. Plaintiff's State Law Claims are Due to be Dismissed Without Prejudice if She Cannot Plead a Plausible Federal Law Cause of Action

Plaintiff's Complaint states that the court has subject matter jurisdiction under 28 U.S.C. § 1331.  (Doc. # 1 at ¶ 3).  Plaintiff has not stated that diversity jurisdiction is proper, and a

---

[3] Plaintiff clearly does not allege a conspiracy that violates 42 U.S.C. § 1985(1) or 1985(2).

review of the Complaint reveals that diversity jurisdiction is inapplicable because, at a minimum, Plaintiff and Defendant City are both citizens of Alabama. (Doc. # 1 at ¶ 5). Because the § 1983 and § 1986 claims are due to be dismissed for failure to state a claim, no federal-law claim remains in this action.

Under 28 U.S.C. § 1367(c)(3), this court has discretion to retain jurisdiction over or dismiss state-law claims once all federal claims are decided. However, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co*., 370 F.3d 1086, 1089 (11th Cir. 2004). This court finds no reason to retain jurisdiction over the state-law claims, and, thus, is inclined to dismiss them without prejudice if Plaintiff cannot resolve the deficiencies in her § 1983 claims.[4]

---

[4] To be clear, dismissing Plaintiff's state law claims for lack of supplemental jurisdiction would not be an indication that the court finds them plausible or legally viable. For example, it appears that Ala. Code § 11-47-190 provides a municipality, such as the City, immunity from wantonness and intentional infliction of emotional distress claims. *Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991) (applying this immunity to a wantonness claim); *Ex parte Harris*, 216 So. 3d 1201, 1216 (applying this immunity to an intentional infliction of emotional distress claim). Section 11-47-190 does not provide a municipality immunity from a gross negligence claim, as such a claim is in essence a simple negligence claim. *Town of Loxley v. Coleman*, 720 So. 2d 907, 909 (Ala. 1998).

Likewise, the court is doubtful that Count VII states a viable intentional infliction of emotional distress claim. Alabama courts traditionally have recognized the tort of outrage in three contexts: (1) "wrongful conduct in the family-burial context," (2) "barbaric methods employed to coerce an insurance settlement," and (3) "egregious sexual harassment." *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010) (quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)). In *Horne*, the Alabama Supreme Court affirmed a summary judgment for defendants in an outrage action where employees at an apartment complex threatened to have plaintiffs arrested for criminal trespass, have their property removed, and ruin their credit unless they surrendered their apartments within a 10-day period provided by the landlord. *See id.* at 620, 630-31. The Alabama Supreme Court also has held that a plaintiff lacks a viable outrage claim where defendants purchased a property at a sheriff's sale, defendants sent overdue mortgage payments to a mortgage holder, defendants asked plaintiffs to vacate the premises, and defendants filed an unsuccessful eviction proceeding. *Edwards v. McAllister*, 437 So. 2d 74, 74-76 (Ala. 1983). In light of the Alabama Supreme Court's holdings in *Horne* and *Edwards*, the court concludes that the conduct alleged in the Complaint is insufficient to show that Defendants' conduct "rose to a level beyond all possible bounds of decency," even if a wrongful eviction occurred. *Id.* at 75-76 (internal quotation marks omitted).

**IV.	Conclusion**

For the reasons explained above, all of the claims in Plaintiff's Complaint are due to be dismissed without prejudice. The court will grant Plaintiff leave to amend her complaint if she can plausibly allege factual allegations that state a claim upon which relief may be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this April 4, 2018.

*[signature]*

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE